1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WORKING WASHINGTON,

                          Plaintiff,

    v.

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY,

                        Defendant.

**No.**  12-cv-566

**PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

**Noted For Consideration:
April 27, 2012**

## INTRODUCTION

      This is an action for injunctive and declaratory relief filed by Plaintiff Working Washington ("Working Washington") as a consequence of Defendant Central Puget Sound Regional Transit Authority ("Sound Transit")'s violation of Working Washington's First Amendment-protected right to free speech.

      Working Washington is a Washington-based non-profit coalition of individuals, neighborhood associations, immigrant groups, civil rights organizations, people of faith, and labor organizations united for good jobs and a fair economy.   Declaration of Jonathan Rosenblum ("Rosenblum Dec."), ¶ 2.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 1
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

On March 20, 2012, in violation of Working Washington's constitutional right to free speech and contrary to its own advertising policies, Sound Transit unilaterally and unlawfully decided not to publish an advertisement that had been submitted to it by Working Washington for publication on Defendant Central Puget Sound Regional Transit Authority (hereafter "Sound Transit")'s light rail interiors (hereafter, the "Good Jobs – Airport" ad).

Working Washington hereby respectfully requests this Court to issue a preliminary injunction, pursuant to Fed. R. Civ. P. 65, directing Sound Transit to publish, within 24 hours of such issuance, an advertisement that was previously proffered by Working Washington to Sound Transit, a communication which is protected by the First Amendment.

This immediate injunctive relief is appropriate because (1) Working Washington is likely to succeed on the merits of its claims, (2) Working Washington will likely suffer irreparable harm in the absence of this injunctive relief, (3) the balance of equities tips in its favor, and (4) issuance of injunctive relief is in the public interest.

## STATEMENT OF FACTS

A.    The "Good Jobs - Airport" Advertisement

On or about February 3, 2012, Working Washington contacted Defendant Sound Transit's agent, Clear Channel Outdoor ("Clear Channel"), for the purpose of placing an advertisement on the interiors of selected light rail trains.  Rosenblum Dec., ¶ 3.

This ad was designed as part of a multi-month movement to educate the public on the issue of low wage jobs at Sea-Tac Airport, and to raise public awareness in general and in advance of a public rally set for April 28, 2012.  Rosenblum Dec., ¶¶ 3-4.  The ad was and is intended to draw public attention to the problem of low wage jobs at the Seattle-Tacoma

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 2
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

International Airport ("Sea-Tac Airport") by highlighting the difference between "first class" and "coach class" airline passengers, on one hand, and "poverty class" workers employed at Sea-Tac airport.  Rosenblum Dec., ¶¶ 9-10.

To illustrate this "poverty class" of workers, the ad features a photograph of a skycap named Hosea Wilcox who is identified in the ad as receiving only "minimum wage" after having been employed at Sea-Tac for 31 years.  Rosenblum Dec., Ex. E.

In addition to attempting to draw public attention to the problem of low wage jobs at Sea-Tac airport, this ad was and is intended to educate the public about the need to create good jobs to rebuild our communities.  Rosenblum Dec., ¶ 11.

B.    The Contract Between Sound Transit and Working Washington to Run the Good Jobs – Airport Advertisement

On February 28, 2012, Clear Channel generated a contract proposal for the publication of the above referenced ad on Sound Transit's light rail train interiors, specifically thirty 20" x 30" light rail "direct apps" interior signs and one hundred and twenty four 11" x 28" light rail "interior cards," at a combined cost to Working Washington of $5,250.  Rosenblum Dec, ¶ 6 and Ex. A (Contract for Outdoor Bulletin Advertising).  Clear Channel also offered to handle certain production costs related to these signs for an additional $1,037.42.  Rosenblum Dec, ¶ 6 and Ex. B (TRANSIT Production QUOTE Form).  The ad was scheduled to run for one month, beginning April 9, 2012.  Rosenblum Dec., ¶ 4.

Both the Contract for Outdoor Bulletin Advertising and the TRANSIT Production QUOTE Form were accepted and signed by Working Washington on March 6, 2012, with the amounts paid to Defendant Sound Transit on March 7, 2012.  Rosenblum Dec., ¶ 7 and

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 3
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

Exs. C & D.  Following that date, the money was then deposited into Clear Channel's bank account. Rosenblum Dec., ¶ 8.

On March 16, 2012, Working Washington provided a copy of the ad to Clear Channel.  Rosenblum Dec., ¶ 9 and Ex. E.

C.      Sound Transit's Advertising Policies and Procedures

At least as early as July 29, 2011, Sound Transit had in place a written policy concerning its policies, practices and procedures for the placement and content of ads on its public transit vehicles.  *See* Rosenblum Dec., Ex. G (Administrative Policies and Procedures No. 35, "Advertising Standards") (hereafter, "Advertising Policy").  This policy was, and is, applicable to Working Washington's ad.

Sound Transit's Advertising Policy restricts advertisements that fall under a variety of categories such as tobacco, profanity, violence, adult-oriented goods, etc.  Included in its list of eighteen restricted categories is a category consisting of advertisements deemed "political."  The definition of an advertisement deemed to be "political" in nature is one that "promotes or appears to promote any candidate for office, any political party or promotes or implies position on any proposition, referendum, proposed or existing laws, or other ballot measures."  Rosenblum Dec., Ex. G, at 3.

Consistent with and pursuant to its Advertising Policy, Sound Transit has an established practice of publishing a wide variety and spectrum of ads containing non-commercial speech, so long as it does not contravene the specific prohibitions set forth in the Advertising Policy.  In fact, Sound Transit has previously accepted an advertisement paid for by Working Washington, an ad which Sound Transit published from October 17, 2011

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

through November 17, 2011.  This ad stated "Our Bridges Need Work.  So Do We," and bore the tagline "Stand Up For Good Jobs" (hereafter, the "Good Jobs – Bridges" ad).  Rosenblum Dec., ¶ 14.

The immediate goal of the Good Jobs – Bridges ad was to raise public awareness of the need for public investment in infrastructure developments.  Like the Good Jobs – Airport ad, however, this ad also had the broader goal of educating the public about the need to create good jobs to rebuild our communities.  This ad ran on the outside of Sound Transit buses.  *See* Rosenblum Dec., ¶¶ 14-15 and Exs. H & I.

Additionally, in the spring of 2011, Sound Transit ran an ad promoting a website called Your Options.com.  Declaration of Carson Glickman-Flora ("Glickman-Flora Dec."), ¶ 2 and Ex. A.   The advertisement, which Sound Transit ran inside its light rail train cars, bore the picture of a young woman with a statement suggesting that this organization was there to help her with her decisions related to childbirth.      *Id.* at ¶ 3 and Ex. A.   This advertisement was paid for by the Vitae Foundation, an organization that is "focused on using research-based messaging to educate the public about the value and sanctity of human life; restoring this value as a core belief in the American culture; and reducing the number of abortions."  *See http://www.vitaefoundation.org/about* (viewed April 3, 2013).  *Id.* at ¶ 7 and Ex. D.

On March 25, 2011, Glickman-Flora and others sent a letter complaining that the advertisement was misleading and deliberately deceptive.  *Id.* at ¶ 5 and Ex. B.  She received a letter from Clear Channel in which Clear Channel very clearly stated that because this ad

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1    did not fall into any of the specific categories of prohibited advertisements, the advertisement

2    was acceptable.  *Id.* at ¶ 6 and Ex. C.

3    D.    Sound Transit's Rejection of the Good Jobs – Airport Ad

4         On March 20, 2012, after the Good Jobs – Airport ad had previously been accepted

5    by it, along with Working Washington's payment for that ad, Clear Channel, via a two

6    sentence email, notified Working Washington that Sound Transit was declining to run the ad

7    because it was not allowing "political type ads on their buses or trains."  Rosenblum Dec, Ex.

8
9    12.

10        As was noted above, Sound Transit's Advertising Policy restricts advertisements

11   deemed "political."  Specifically, Sound Transit's Advertising Policy provides that it will not

12   accept ads that fall into the following category:

13
14   •   Political.   Sound Transit reasonably believes that the advertisement, or any material
         contained in it, promotes or appears to promote any candidate for office, any political
15       party or promotes or implies position on any proposition, referendum, proposed or
         existing laws, or other ballot measures.
16
17   Rosenblum Dec, Ex. G.

18        The Good Jobs – Airport ad unmistakably does not fall into the category of ads

19   precluded by this provision of the Advertising Policy.  It is not, and could not conceivably be

20   mistaken for, an ad that "promotes or appears to promote any candidate for office, any

21   political party or promotes or implies position on any proposition, referendum, proposed or

22   existing laws, or other ballot measures."

23        None-the-less, as was also noted above, this "political" restriction is what Sound

24
25   Transit relied upon in making its after-the-fact decision to decline to run Working

26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 6
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1    Washington's ad.        Since this date, Working Washington has made repeated requests that

2    Sound Transit run the ad, all of which have been denied.  Rosenblum Dec., ¶ 12.

3                                    **ISSUE PRESENTED**

4             Whether this court should issue an order directing Sound Transit to immediately

5    publish Working Washington's ad, given that (1) Working Washington is likely to succeed

6    on the merits of its claims, (2) Working Washington will likely suffer irreparable harm in the

7    absence of this injunctive relief, (3) the balance of equities tips in its favor, and (4) issuance

8    of injunctive relief is in the public interest.

9                                   **EVIDENCE RELIED UPON**

10            Working Washington relies upon the Declaration of Jonathan Rosenblum, the

11   Declaration of Carson Glickman-Flora, and the documents attached thereto.

12                                        **ARGUMENT**

13   **I.       PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED WHERE
             THE PARTY SEEKING THE INJUNCTION DEMONSTRATES IT IS
14           LIKELY TO SUCCEED ON THE MERITS, TO SUFFER IRREPARABLE
             HARM ABSENT SUCH RELIEF, THAT THE BALANCE OF EQUITIES TIPS
15           IN ITS FAVOR, AND THE INJUNCTION IS IN THE PUBLIC INTEREST.**

16            A plaintiff seeking a preliminary injunction must establish that it is likely to succeed

17   on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief,

18   that the balance of equities tips in its favor, and that an injunction is in the public interest.

19   *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

20            //

21            //

22            //

23
24
25
26

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 7
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1
2

## II.   ALL FOUR PRELIMINARY INJUNCTIVE RELIEF CRITERIA ARE SATISFIED IN THIS ACTION.

3

### A.   Working Washington Is Likely to Succeed on the Merits of Its First Amendment Claim Because Sound Transit's Light Rail Interior Advertising Spaces are a Designated Public Forum and Sound Transit's Prohibition of the Good Jobs-Airport Ad Does Not Survive Strict Scrutiny.

4
5
6

#### 1.   Sound Transit's light rail interior advertising space constitutes a designated public forum.

7
8
9
10

The Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes."  *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).  Forum analysis divides government property into three categories; (1) *public forum* – a place that has traditionally been available for public expression (*e.g.*, public parks); (2) *designated public forum* – a non-traditional forum that the government has opened for expressive activity by part or all of the public; and (3) *non-public forum* – all remaining government property.   *See id.* at 800, 802-803; *Perry v. Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 & n.7, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

11
12
13
14
15
16
17
18
19
20

In classifying the relevant forum, the Court has "focused on the access sought by the speaker."  *Cornelius,* 473 U.S. at 801.  Here the relevant forum at issue is the interior advertising spaces on Sound Transit's light rail trains.[1]

21
22
23
24

---

25
26

[1] *See, Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 976 (9th Cir. 1998); *Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.*, 148 F.3d 242, 248 (3d Cir. 1998) ("[The plaintiff]…sought access only to the advertising space leased out by [the transit authority, through its agent]…  We conclude, therefore, that the forum at issue is [the transit authority's] advertising space.").

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 8
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1
2
3
4
5
6

Where there is a policy governing the display of advertisements by transit authorities on interior spaces used for advertising, the debate centers on whether such spaces constitute a designated public forum or a non-public forum.  *See, e.g., Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.,* 148 F.3d 242, 248 (3d Cir. 1998) (holding that a transit authority's advertising space did not constitute a traditional public forum).

7
8
9
10
11
12
13
14
15
16
17

The creation of a designated public forum requires a decision by the government to "intentionally open[] a nontraditional forum for public discourse."  *See Cornelius*, 473 U.S. at 802-03; *Christ's Bride Ministries,* 148 F.3d at 248 ("A designated public forum is created because the government so intends.  Inaction does not make such a forum; neither does the allowance of 'limited discourse'") (quoting *Cornelius,* 473 U.S. at 802)).  In determining if the government created a designated public forum, courts have looked to the government's intent with regard to the forum in question – whether the government clearly and deliberately opened the forum to expressive conduct – considering the government's policy and practice, the nature of the property, and the property's compatibility with the expressive activity.  *See Cornelius,* 473 U.S. at 802-803; *Christ's Bride Ministries,* 148 F.3d at 248.

18
19
20
21
22
23

In making this determination, courts consider the government's past practice in conjunction with the purpose of the forum.  *See, e.g., Cornelius,* 473 U.S. at 802 (when attempting to distinguish between a designated public forum and a limited public forum, courts look to "the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum").

24
25
26

Various Circuit Courts have concluded that advertising space on government-run buses becomes a designated public forum where the transit authority has permitted

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 9
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

advertising on a "wide variety of commercial, public-service, public-issue, and political ads.," *Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.,* 767 F.2d 1225, 1232 (7th Cir. 1985), or where the transit authority has permitted "political and other non-commercial advertising generally" on the exterior of buses, *New York Mag. v. Metropolitan Transp. Auth.*, 136 F.3d 123, 130 (2d Cir. 1998) (holding that, because the transit authority allowed both commercial and political speech, the outside of its buses constituted designated public forums).  *See also United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341 (6th Cir. 1998) (finding a designated public forum where a policy of accepting political and public-issue advertisements demonstrated an intent to "open the property to controversial speech").

Based on Sound Transit's Advertising Policy and its past practices, it is clear that Sound Transit permits and has allowed a wide variety of issue-related advertisements and thus has transformed the advertising spaces of its public transit vehicles into designated public forums.

First, it is clear from Sound Transit's Advertising Policy itself that aside from the eighteen designated restrictions, Sound Transit *will* permit a wide variety of non-commercial advertisements, including "issue" advertisements the purpose of which is to inform the public regarding a particular social goal or concern, rather than simply to sell a product.  Not one of the eighteen designated restrictions suggests that advertisements communicating a group's social concerns are not to be permitted, just so long as those advertisements do not "cross the line" by being demeaning or disparaging to individuals or groups of individuals, containing profanity, containing an image of graphic violence, and so forth.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 10
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The only inference which can be drawn from this policy is the one asserted by Plaintiff herein: that Sound Transit created a designated public forum because it did not prohibit or preclude any advertisements other than those that contravene its very specific and limited exclusions.  *See Planned Parenthood, supra,* 767 F.2d at 1232-33 (holding that the transit authority had created a designated public forum because it maintained no system of control over the advertisements that it accept[ed]…other than the general contractual directive…to refuse vulgar, immoral, or disreputable advertising" and "allowed its advertising space to be used for a wide variety of commercial, public-service, public-issue, and political ads"; noting also that the transit authority had no policy pursuant to which the advertisement at issue was excluded); *Christ's Bride Ministries*, 148 F.3d at 254 (noting that no policy or practice demonstrated that the government intended the forum to be closed to the speech at issue).[2]

Second, Sound Transit opened the forum provided by its light rail interior advertising space by permitting discourse about very similar issues, such as those depicted in the Good Jobs - Bridges ad Sound Transit ran for Working Washington in October and November of 2011, just a few months ago.  Sound Transit's decision to run that ad, as well as its decision to run the Vitae Foundation ad discussed above, show both its intent and its past practice relating to making its advertising space open to issue-oriented speech.[3]

---

[2] As was the case in *Christ's Bride Ministries*, the nature of the forum here "is partly commercial, consistent with the goal of [the transit authority] to earn a profit on its advertising space…However, [the transit authority] has also used the advertising space to generate a profit through *expressive* activity.  This expressive use has not interfered with providing rail transportation facilities to the public.  Thus, the nature of the forum suggests … that the government has dedicated the space to expression in the form of paid advertisements." 148 F.3d at 250 (emphasis in the original)).

[3] The fact that Sound Transit's Advertising Policy declares, in paragraph 3.1, that "Sound Transit facilities are non-public forums," Rosenblum Dec., Ex. G, does not alter this conclusion.  We are aware of no caselaw

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 11
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

In fact, Sound Transit's policy towards "issue" advertisements, as expressed by its agent Clear Channel, could not possibly have been more clearly stated than it was in the letter Clear Channel wrote to Ms. Glickman-Flora in response to the complaint which she had made to King County Executive Dow Constantine regarding the Vitae Foundation ad. In that letter, Clear Channel acknowledged that

> As advertising vendor for Sound Transit, we contract and post advertising for clients **with diverse messages covering many products and services.** Our contract with Sound Transit stipulates the exclusion of certain categories of advertising (alcohol, tobacco and adult entertainment to name a few). This particular client did not fall into one of those restricted categories.

> If you have a message you'd like to advertise **to express a different point of view,** we would be happy to provide the same platform for your message as well, **assuming that it does not fall under our restrictions noted above**.

Glickman-Flora Dec., ¶ C (emphasis added).

Through this letter, Sound Transit made two things crystal clear. First, that through the advertising opportunities it makes available to the public, it provides a forum for "diverse messages covering many products and services." Second, that so long as one of those "diverse messages" does not "fall under" one of the eighteen restrictions contained in its Advertising Policy, Sound Transit "would be happy" to provide a platform for this expression.

In light of these assertions by Sound Transit's agent only slightly more than one year ago, and in the context of the legal authority cited above, it is clear that Sound Transit's light rail interior advertising spaces are a designated public forum.

---

suggesting that a governmental entity's description of itself as being a non-public forum trumps the legal standard for determining what type of forum it has created that is set forth above.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 12
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

2.      **Sound Transit's decision to limit Working Washington's speech is subject to strict scrutiny.**

"Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Pleasant Grove City v. Summum, 555 U.S. 460, 469–70, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009).*   Thus, in a designated public forum, the government's content-based restrictions on private speech must survive "strict scrutiny" in order to pass constitutional muster. *Perry*, 460 U.S. at 45-46. Thus, the speech restriction must be "necessary to serve a compelling state interest and the exclusion [must be] narrowly drawn to achieve that interest."   *Cornelius, supra,* 473 U.S. at 797; *Pleasant Grove City*, 555 U.S. at 469-70; *Perry*, 460 U.S. at 45-46 (In a public forum, "the rights of the State to limit expressive activity are sharply circumscribed…For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."); *Flint v. Dennison*, 488 F.3d 816, 830 (9th Cir. 2007) ("A content-based restriction on speech in a public or designated public forum is subject to strict scrutiny, requiring the state to show a compelling interest in the restriction that is drawn narrowly to meet that interest.").

In this case, Sound Transit cannot possibly demonstrate that its censorship of Working Washington's freedom of speech was narrowly drawn to achieve a compelling government interest.  Working Washington is therefore likely to prevail on its constitutional claim that Sound Transit has violated its First Amendment rights.

//

//

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 13
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

**B.** **Even if This Court Finds Sound Transit's Advertising Spaces to be a Non-Public Forum, Sound Transit's Refusal to Publish Working Washington's Ad Still Violates Working Washington's First Amendment Rights.**

Plaintiff Working Washington believes the advertising spaces on the interior of Sound Transit's light rail trains are designated public forums and urges this Court to find so. However, should this Court find that the advertising spaces are non-public forums, Working Washington contends that Sound Transit's refusal to publish the proposed ad still fails to meet the standard allowed for rejecting speech in a non-public forum.

If a forum is non-public, then the government may restrict speech "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'"   *Cornelius,* 473 U.S. at 800 (quoting *Perry, supra,* 460 U.S. at 46).   Content restrictions are not viewpoint neutral if "the government targets not subject matter, but particular views taken by speakers on a subject."   *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995).

Here, as was demonstrated above, the Good Jobs – Airport ad does not meet any of the restricted categories in Sound Transit's own Advertising Policies.  Because of that, there clearly cannot be any "reasonable" excuse for Sound Transit not to run it.

Even if this ad *did* fall within one of the restricted categories in Sound Transit's Advertising Policies, however, there would still be no "reasonable" excuse for Sound Transit to exclude this ad, given Sound Transit's prior decision to run the Good Jobs – Bridges ad, the Vitae Foundation ad, and no doubt additional "issue" advertisements about which Plaintiff will no doubt learn more through discovery.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 14
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1    Instead, the only reason Sound Transit could possibly have for refusing to run this ad

2   is that it does not like the content, which depicts allegedly disgraceful workplace conditions

3   at Sea-Tac Airport.  While this is a destination to which Sound Transit's own trains are

4   running and an entity with which Sound Transit works closely, refusing Working

5   Washington's ad on this basis is classic "content discrimination" forbidden by the First

6
7   Amendment even when a "rational basis" test is being applied.[4]

8       **C.    Working Washington Will Suffer Irreparable Injury If Sound Transit
                Censors Its Free Speech.**

9       The injury to Working Washington caused by Sound Transit's unlawful censorship of

10  free speech is likely, *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d

11  249 (2008), and imminent, *Caribbean Marine Services Co., Inc. v. Baldridge*, 844 F.2d 668,

12
13  674-75 (9th Cir. 1988). "Both [the Ninth Circuit] and the Supreme Court have repeatedly

14  held that '[t]he loss of First Amendment freedoms, for even minimal periods of time,

15  unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary

16  injunction." *Klein v. City of San Clemente,* 584 F.3d 1196, 1207-08 (9th Cir. 2009), *cert.*

17  *denied*, 130 S.Ct. 1706, 176 L.Ed.2d 183 (2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373,

18
19  96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)); *Sammartano v. First Judicial Dist. Court,* 303 F.3d

20
21  _____

22  [4] Notably, this is not at all the same situation as that which was presented to the Honorable Richard A. Jones in
    *Seattle Mideast Awareness Campaign v. King County,* Case No. C11-94RAJ, a case which dealt with a
23  somewhat similar legal question.  In that case, Judge Jones found that the following four of the six categories of
    evidence cited by King County Metro to show that it was "reasonable" for it to refuse the advertisement in
24  question in that case, taken together, did form "a reasonable basis" for the County's decision: (1) actual threats
    of violence or disruption from the public; (2) threatening photographs of attacked buses left anonymously at
    Metro offices; (3) safety concerns raised by twenty bus drivers; and (4) advice of law-enforcement officials.
25  *See* Case No. C11-95RAL, Dkt. 40 (February 18, 2011).  Obviously, neither any one of these four justifications,
    nor any similar or similarly persuasive rationales, can be cited by Sound Transit as a justification for its refusal
26  to accept the Good Jobs – Airport advertisement at issue here.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 15
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

959, 973 (9th Cir. 2002).  The harm is "particularly irreparable" where the speech sought to be restricted is "political speech."  *Klein*, 584 F.3d at 1208.

Sound Transit's unilateral and improper decision to decline to publish Working Washington's ad has prevented Working Washington from publishing its message to the audience it chooses to attempt to communicate to in an economical and effective manner.  Moreover, the timing of the ad was and is important to Working Washington – during the month of April, Working Washington intends to kick off a several month movement designed to educate the public about low wage jobs at SeaTac Airport.  The ad was planned to run in early April in support of a rally being held on April 28, 2012.   *See,* Rosenblum Dec., ¶¶ 3-4.

The injury to Working Washington is, therefore, likely, imminent, and irreparable.

### D.   The Balance of Equities Is In Favor of Working Washington and An Injunction Is In The Public Interest.

The two remaining equitable factors likewise mandate that an injunction be issued in this matter.  The First Amendment erects a barrier against government interference with a broad swath of free speech activities.   The risk that denying the motion for preliminary injunction would permit Sound Transit to violate Working Washington's constitutionally-protected free speech rights tips the balance of hardships in favor of Plaintiff.  *See, Klein,* 584 F.3d at 1208 (in balancing the hardships, court considered the irreparable harm caused by even a brief infringement on First Amendment protected free speech rights and found the balance of equities and public interest "tip sharply in favor" of an injunction); *Sammartano*, 303 F.3d at 973 (comparing the irreparable harm caused by the loss of First Amendment Freedoms if relief is *not* granted with the asserted hardship to the opposing party).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 16
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

Government-sanctioned free speech violations clearly harm the public, and the potential infringement of free speech rights easily meets the public interest prong for issuance of an injunction. *See, e.g., Klein,* 584 F.3d at 1208 (in evaluating the public interest prong, the court recognized the "significant public interest in upholding First Amendment principles"); *Sammartano,* 303 F.3d at 974 (same). In this case, while Working Washington has at stake its exercise of free speech rights, there is no discernible harm to Sound Transit in being required to run the ad for which it already accepted payment from Working Washington.

Upholding constitutionally-protected free speech rights and holding governments accountable to their commercial promises are in the public interest, and the balance of equities in this case strongly favors an injunction.

### CONCLUSION

It is respectfully requested that this Court grant Plaintiff Working Washington's Motion for Preliminary Injunction and direct Defendant Sound Transit to publish Plaintiff Working Washington's ad within 24 hours of this Court's Order.[5]

//

//

//

---

[5] The logistics of publication (*e.g.*, the number of trains, the number of days, and the like) should be governed by the parties' Contract for Outdoor Bulletin Advertising and the TRANSIT Production QUOTE Form or further Order of this Court.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 17
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1

2

DATED this 4th day of April, 2012.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

s/Dmitri Iglitzin
Dmitri Iglitzin, WSBA # 17673
Schwerin Campbell Barnard Iglitzin & Lavitt LLP
18 West Mercer Street, Suite 400
Seattle, WA 98119
Ph.  (206) 257-6003
Fax (206) 257-6038
*iglitzin@workerlaw.com*

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 18
Case No. 12-cv-566

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828